VEITCH (PEYTON v.). See Case No. 11,- 057.

VEITCH (UNITED STATES v.). See Cases Nos 16,613, 16,614.

## Case No. 16,910a.

### The VELASCO.

[Blatchf. Pr. Cas. 54.] [1]

District Court, S. D. New York. Oct., 1861.

PRIZE—ENEMY PROPERTY—COSTS—ADVANCES BY MASTER—WAGES OF CREW.

1. Vessel condemned as enemy property. Her cargo, being neutral property, on transportation in a lawful trade, released; without cost to the captors, there having been no probable cause for its arrest.

2. Whether the captors, as distinguished from the United States, can have an award of costs in a prize suit, quere.

3. A claim of the master to be reimbursed his advances for repairs and necessary supplies for the vessel reject-d.

4. A claim of the crew for their wages rejected on the ground that the vessel was enemy property.

In admiralty.

BETTS, District Judge. This vessel was captured at sea, off Cape Hatteras, by the United States vessel of war Albatross, July 18, 1861. and sent into this port, with the cargo on board, both as prize of war. The cargo was merchandise purchased for and shipped at Matanzas to merchants of New York, as their property, and the United States attorney, on the trial, abandoned all claim against the cargo. including costs to the United States in this suit, on its capture. Mr. Upton, of counsel for the individual captors and libellants, insists that costs should be imposed on the cargo, there being valid cause for the capture of the vessel, and reasonable cause for the arrest of the cargo. No formal claim was filed in court in behalf of the owners of the cargo. The master of the vessel filed a claim in his own behalf and for his principals. the owners of the vessel, denying the lawfulness of her arrest, and averring that she is not the property of enemies of the United States. but is owned by citizens thereof. and averring that she is not liable to condemnation as prize of war. He also sets up a claim to be reimbursed for advances made by him. as master of the vessel. for her repairs and ne- cessities whilst under his command, to the amount of $184.75. Daniel M. Stebbins filed

[1] [Reported by Samuel Blatchford, Esq.]

his libel against the vessel and cargo, to recover wages for his services as a seaman on board the vessel during her last voyage. The United States appeared to that suit, and denied the right of action set up by the libel. It was admitted, on the trial, that other members of the crew on the same voyage had outstanding claims of the same character, which the counsel on both sides desired should be considered and disposed of by the court in the decree to be rendered in this cause. The libellants deny the right of the master or crew to any lien or remedy against the vessel or her cargo upon either of these claims.

The ship's papers found on board at the time of her seizure, and the preparatory proofs, show that the owners of the vessel reside in Florida and Texas, and did so at the time the vessel left port on her last voyage. The master testifies, on his examination in preparatorio, that he is a naturalized citizen of the United States; that his family lives in Brooklyn, New York, where he had resided ten years; and that he had resided for the last two years in Pensacola, Florida. He knew of the state of war existing before he entered upon the voyage; and that the Southern States were blockaded by the United States, before he went to Matanzas and entered upon the voyage thence to New York. The cargo began to be laden on board there the 6th of July last. There is no controversy, upon the proofs, that the vessel was the property of enemy owners at the time of her capture and entering upon the voyage in question, and she is, therefore, condemned as lawful prize to the libellants, with costs; but she was a lawful bottom, on which neutral cargo could be transported from one neutral port to another, or to a port of a belligerent not in a state of blockade. 1 Kent. Comm. 59. The cargo shipped from Matanzas to New York was, therefore, transported in a lawful trade, and was properly released, on arrival here, from arrest, and restored to its loyal owners in this port. 1 Kent, Comm. 124. It seems to me, also, that the restoration must be absolute as to the libellants, without any condition of costs against the claimants. There were no facts upon the face of the papers, or produced from the preparatory proofs, creating a probable cause for arresting this cargo. Its transportation in an enemy's bottom was legal and innocent as to the neutral shippers, and lawful in respect to the master or owners of the vessel; and the evidence is clear of all color of semblance that the shipment was under any agency or connivance of the consignees, with a view to aid or promote the navigation of commerce of an enemy marine, or with knowledge or notice that such mode of conveyance was to be employed.

The claim of costs in behalf of the individual captors must, accordingly, be denied. I do not touch in this decision the point whether, in suits so framed and conducted, the individual libellants so associated with the United States as party actors can have a decree for costs to themselves separate from an award made to the libellants in common, and whether, in this class

of prize actions, the United States have or not the entire control of the suit in respect to incidental expenses, as well as its disposition upon the merits.

The demand of the master, through the claim and answer interposed by him to this suit, that he be repaid, out of the proceeds of the vessel, the disbursements made by him for her use, cannot be maintained. If this demand was an incumbrance at all on the vessel, by the jurisprudence of the place where the alleged credit was given, the lien was a tacit one, no way manifested by the ship's papers, and of a character which Sir William Scott held not to be sufficient to support a claim of property in a court of prize. The Marianna, 6 C. Rob. Adm. 24. And he ever refused to recognize the claim, although resting in a bottomry bond, because it amounted to no more than a right of action, although of a character highly favored in maritime courts. The Tobago, 5 C. Rob. Adm. 218. The claim must be rejected.

The demand of wages to the seamen on board of the schooner is not brought before the court technically by way of claim or answer to the libel, but one of the crew filed a libel against the vessel for the recovery of his wages on the voyage upon which she was arrested, and the question respecting his right so to be allowed wages, or to have them awarded to the crew, is submitted to the court on the general hearing upon the issue in the suit for the condemnation of the vessel as prize.

This vessel being owned by enemies, at war with the country, the United States, as her captors, stand in no relation of equity making them or her proceeds answerable to the seamen navigating her for enemy owners. The services on board of her in that character were in prejudice of the interests of the United States, and no way in promotion of them. It was in direct conflict with the interest and safety of the United States that the enemy should be enabled to carry on trade in their vessels, either from and to her own ports or those of neutral powers, and it is a dereliction of duty and allegiance to their own country to engage in any capacity in navigating the vessels of an enemy, or giving any support to such navigation. The Benjamin Franklin, 6 C. Rob. Adm. 350. The goods of neutrals, honestly placed on board the vessel, would be exempt from arrest, because intrusted to such carriage; but the vessel, as a means of conveyance in the interest of the enemy, by all the rules of public law, becomes justly prize of war to the government against which her owners are waging war. Sir William Scott says, in the case of The Friends, 4 C. Rob. Adm. 144, that nothing can be better settled than that the act of capture defeats all rights and interests of seamen to and in wages for service in the captured ship; and this rule stands firm in the elements of public law, except as modified by the event of a recapture of the vessel and her virtual restoration to her original owners. 3 Kent, Comm. 192, and notes; Curt. Seam. Rights, 378, and notes; Abb. Shipp. (5th Am. Ed., by

Perkins) pt. 4, c. 3, and notes; 1 Pars. Merc. Law, 274. note 2. The seamen, therefore, possess no legal claim for wages earned on an enemy vessel; and no equity arises in their behalf, because no act has been rendered by them contributing to the seizure of the vessel, intended for the benefit of the captors. The libel. filed in their favor against the vessel or her proceeds in court must, therefore, be dismissed, with costs. The case presented by them bears no analogy to a prosecution by seamen against a vessel recaptured and restored to her original owners, and thus made capable of earning wages for their benefit. These seamen were serving voluntarily on board an enemy vessel, and it no way strengthens their claims that they are in part neutrals, and in part loyal subjects of the United States, in their private sentiments. They were acting on the voyage in support and furtherance of the interests and commerce of an enemy, and against the rights of the United States, and both their suit and petition, as against the proceeds of the captured property, must be dismissed. Decree accordingly.